Our second case is Morning 410-0603, Interstate Trucks v. State of Illinois. For the appellant, Mr. Young, and for the appellee, Mr. Truitt, you may proceed. Thank you and good morning, and may it please the court, Mr. Truitt. I would like to start with the letter that the clerk sent out at the direction of the court on April 25th, making inquiry about some parallel sections of the vehicle code and asking whether we would address that here at oral argument. I find no connection, actually, between the two. It seems like the vehicle code is concerned about titling of vehicles and having appropriate plates and licensure to drive on the roads, whereas what we're dealing with here has to do with the motor fuel tax and its collection alone. There's no question and the state has acknowledged that these trucks were affixed with seven-day permits issued by the Secretary of State enabling them to exit the state from one dealership to another. So I submit that it's really just a question of pure statutory interpretation is what the legislature intended when, you know, and obviously in the scheme of, you know, trucks traveling the highways, we have this very complicated apportionment law. You can get a license and you can file your mileage with the various states and apportion the taxes so you don't get double taxed. That's not at play here. We acknowledge we didn't have any such license because we're not operating on an interstate basis. The question simply then is whether a single trip permit was required as prescribed by the legislature and we submit that there are two good reasons not to do so. First of all, it's the very definition of a commercial motor vehicle as expressed in the Motor Fuel Act itself under 505 section 1.6 where the definition of the vehicle is said to be, is a commercial motor vehicle operated solely within the state for which all motor fuel is purchased within the state. That I think should take care of the situation. The trial court found that, well, they were intending to exit the state of Illinois. Now they hadn't yet. They were mad before they got to the border and stopped there, but, you know, it's the idea that, well, you're leaving the state and therefore, you know, you're not using all the fuel within the state of Illinois. But I think the owner-operator case versus Director Bauer makes that real clear. The interest of the state of Illinois under the statute is only to collect its fair share of the motor fuel tax so that it's treated fairly under the apportionment provisions. But if that definition isn't sufficient, and I submit that it is, you move to section 13A5 itself which enumerates the situations where a single trip permit is required and necessary. Starting with a trip into the state of Illinois. That has no application here. It says a trip through the state of Illinois. That has no application here. And the third one is if you come into the state of Illinois from a point on the border to a point within the state and then return back to the border. Now, you know, just common sense tells us that all of those are directed toward the possibility that commercial motor vehicles can come into the state of Illinois and burn fuel that was purchased in another jurisdiction where the taxes were paid and would deprive the state of Illinois from its fair share of the taxes. Unless, of course, you have a license and the apportionment provisions there. We submit that under one of the most well-known doctrines of statutory construction is when the legislature starts to enumerate things, it by definition excludes other things. This situation is completely different than all those definitions where the single trip permit would apply. The Tennessee truck dealer came to Springfield, Illinois, bought five trucks, affixed them with seven-day permits. The trucks were fueled by the seller with sufficient fuel to leave the state of Illinois. All of that was stipulated by the evidence either by way of stipulation or stipulation. What about the argument that they had three 50-gallon receipts or whatever and how do you fuel five trucks? I think it's silly. Logically, you say there's a pump, you drive two trucks on either side of the pump, you put gas into them, two trucks in the next one, you've got to go to a third pump, there'd be three receipts. Why not? It just makes no other sense. I mean, it's like the department is trying to think of some way now to discredit the evidence that had already agreed it happened because there was no question about exactly what had happened. But even assuming that only three trucks were fueled and there was sufficient fuel in the other trucks, is there a presumption that the fuel in the other trucks was purchased out of the state of Illinois? I don't think so. The fact that the trucks were located in the state of Illinois, I think certainly some sort of a presumption would arise that the fuel was purchased here. There's no suggestion by the department that these trucks were purchased or taken as trade-ins from anybody outside the state of Illinois or anything else. I think it's really a spurious argument that, you know, it's just a hot shot at the evidence trying to make something of a situation where I think the state finds itself, you know, severely outside the bounds of the definitions and statutes itself. From your perspective, your client comes here just to buy the trucks, buys five trucks, gets the seven-day permits, which I take it by answering those questions posed by the clerk, you're saying those seven-day permits have absolutely nothing to do with motor fuel tax. Those are just so the truck can be operated on the highway, whatever it's running on. It's running on air. It still has to have the seven-day permit to travel from Springfield to the border. And you bought those? Correct. Okay. And then after that, you don't buy anything else other than the fuel? Correct. And we presume that the fuel is furnished by the seller? Furnished by the seller. And we're presuming that comes from Illinois because, are these new trucks? No, they were used trucks. Used trucks, but they're either empty or they've got some in their tanks. Then they're filled up so you can drive back across the border. And from your perspective, that's all the purchaser ought to have to do. Period. There anything else you have to do, right? Well, in terms of trip permits or licenses or anything. Correct. You bought the seven-day permits, you bought the trucks, the seller fills them up for you or gives you enough gas to get across the border. And we're exiting the state. And you're exiting the state. Correct. The Revenue Department says you need a single-trip permit. That's what this litigation is about? That's what they said. And that would have cost $100 for five times 20. $20 per truck? It's double that now. And their explanation is you need this permit because they claim the statute requires it? Well, there are departments arguing. You know, and I submit that it's just, you know, it was part of the Blagojevich Doctrine, which I refer to as, hey, no new taxes, but let's see what we can do by way of fees anywhere and everywhere by, you know, reading into any kind of statute or whatever to try to get the fees. And to back up Justice Connick's question, I think there really is no connection because I acknowledge, as the state puts in their brief, the Public Act 88-480 passed in 1994 did take out dealers from the motor fuel tax exception. I acknowledge that. So I think we're left with the question of whether or not we have to buy a single permit. The vehicles we're driving are defined, included by definition, except the definition which says if you buy all your fuel and operate solely within the state of Illinois, then there is no single-trip permit. And my position on that definition seems to me as if you bought a truck and you were only within the state of Illinois and you never left the state, obviously you would never have to buy a single-trip permit. And you wouldn't have to buy any license under the Apportionment Act either. But then the legislature went on to recognize that there are situations where, you know, there's going to be commercial truck travel into the state or through the state. But they specifically did not include, and therefore by statutory definition intended to exclude, the situation where a truck was purchased in the state of Illinois, all it was fueled in the state of Illinois, and only exited the state of Illinois. And I submit that just the purest of common sense requires that the... Well, there may be, but we still need to look at statutory language because it might be stupid, but the legislature could have required a single-tax, what is it called, the trip permit? Single-trip permit. Single-trip permit for just this situation. They could have done that if that's what their intent. Well, I think there would be a different issue as to whether or not, you know, because the state had collected its taxes. Because we're dealing with motor fuel taxes. I know, but they could have said, I mean, the legislature could have said, by the way, if you buy a truck in Illinois and you take it out of the state, you still got to get this permit. That's to make my argument. They didn't say that. But they could have. So what we have to do is we have to look to the legislature. My whole point, counsel, is that you're arguing that this is stupid. It might be a good point, but that's insufficient. Because the legislature can do a lot of stupid things if they wish. Oh, no, I acknowledge that. But I think the issues would have been different had they attempted to double-tax. That would have amounted to a double-tax. Then I think we would have had a whole other panoply of issues which we could have raised. You've correctly identified this as a matter of legislative construction, putting these statutes together and figuring it all out. Given that the legislature removed dealers, which is what we're talking about here is guys selling trucks in Springfield and come and deal with the dealers. Why isn't that an indication that they wanted to eliminate from – I'm stating this awkwardly – shouldn't the deletion of the reference to dealers by the legislature of 94, was that? Right. To the extent that there is this exemption applicable to dealers and the sale of their product, they want to get rid of it. So if you come into Illinois, you've got to get these single-trip permits. Yeah, I acknowledge that they did do it. And I think, as I think it through, maybe the reason was a lot of dealers have transports that they use for their own interstate commerce. They may come into Illinois and get seven or eight cars and load them up and take them out. Maybe that's why dealers were eliminated. I don't know. But what I'm left with here is that since then, and the statute as it reads, defines out the situation where my client found itself to be. Specifically, where the vehicle is operated solely within the state with fuel purchased in Illinois. That seems to satisfy everything the state of Illinois could ever want. It collected its fuel tax. Correct? And we don't have the situation and not even any glimmer of any evidence or suggestion that any kind of fuel was purchased anywhere else. But looking at 13A4, you're not a motor carrier? We're not a motor carrier. They stipulated that. We're not in the business of transporting people or property. So they claim in 13A5 you're a commercial motor vehicle operating in Illinois? Is that the state's claim? Yes. But 13A5 is where it's defined out. Pardon? 13A5 is where the three definitions exist. The three situations where you're coming into the state of Illinois, you're going through the state of Illinois, or you enter the state and go to a point and then return to the border. Those are the three situations where they wanted to require a single-trip permit, which makes sense. You're coming from another state where you fueled, and you've got to burn that fuel on Illinois roads. Illinois wants its fair share. And if you don't have a license, then you get your single-trip permit. But how on earth did the state of Illinois ever complain when you came into the state and you simply exited the state basically with inventory? My client's a dealer, too, in Luverne, Tennessee. So he came up here and got five trucks so he could have more inventory on his lot. All he did was move them out of the state of Illinois with fuel purchased in Illinois at retail. That's clear. And the statutory definitions don't fit the situation. And I submit that when the legislature starts enumerating things by inclusion, the rule is that they specifically exclude all other situations. There's a fancy Latin phrase for that. I can't recall it, but I think I quoted it in the brief. But, you know, it's been around for a long, long time. And for all those reasons, your honors, I ask that the court reverse not only the trial court but the department itself. There is an issue about the standard of review, but I think that, you know, that was adequately briefed. All the evidence was stipulated to, and I think the relevant evidence is clear as a bell. We're left really with just the statutory construction. What did the legislature intend when they excluded the specific situation where Mike might find himself? So if I understand correctly, the department's argument is that the vehicles here were commercial vehicles that were not operated solely within Illinois because they were headed for Tennessee? Yes. And that's what I think the trial court ended up finding too. It said, well, it looks like they're in some sort of interstate commerce. Although we all have to acknowledge they weren't. They were about 20 miles from the border. But presumably they asked the drivers where they're headed for. And, you know, in anticipation of leaving the state, they thought that they could assess them for a single-trip permit, which I think is just completely impermissible under the statute. Unless you have any further questions, I'll thank you. And in lieu of paying $520 trip permits for $100, your clients got hit with $5,000 in fines? Would that be right? Well, there were five trucks, but only four were stopped. And three of them were reduced to $1,000. I assume the other one was left at $2,000. Were there four fines assessed? There were four fines. The first one was $1,000. They assessed $2,000 on each of the others. But at the hearing, they acknowledged that, look, this is one event. This is the first time for all. And they reduced it to $1,000 per truck. Three, so $4,000. Correct. That's correct. Thank you. Thank you. May it please the Court. I'm Eric Truitt, Assistant Attorney General, and I represent the department. I think there's a great deal of confusion in Interstate's position about what the statute requires, and so I'd like to talk a little bit about the statutory structure. Do you agree that the State of Illinois was not deprived of any use tax in this case? I would say that we don't know because Interstate circumvented the scheme that is designed for collecting the tax. Well, my question to you is when they acquired the trucks in Springfield, Illinois, gas in Springfield, Illinois, and drove them and weren't even out of the state yet, isn't it absolutely clear they did not deprive the State of Illinois of any use tax? Again, we don't know that because of deficiencies in record collection and also the lack of credibility with the Thomas affidavit. So it's not – and I can go through both of those in detail. You stipulated to the admission of the Thomas affidavit. We stipulated that he would have testified to that if he had appeared at the hearing. The evidence is undisputed. You didn't bring anything else in. You didn't want to cross-examine him. What sense does it make to stipulate the affidavits and then complain about the evidence? I'm not sure what the strategy was behind having him not testify live, but the department, if you look at the transcript from the administrative hearing, the department spends a great deal of time in its closing argument discussing the value and evidentiary weight of the Thomas affidavits. If you're arguing that there was gasoline fuel purchased outside the state, isn't that like arguing the moon is now orbiting Jupiter or something like that? This is completely ridiculous. Well, if you look at Section 13A, it puts the burden on the motor carrier to keep accurate records of not only where they purchased the fuel but also how much fuel they consumed in the state of Illinois. They don't really have those records. Did they purchase the fuel? Or was it provided by the seller? We have a receipt that CIT, the seller, purchased 150 gallons of fuel. Okay. There's no doubt that on March 21st, I believe it was, that they purchased that amount of fuel. But it's a long way from there to showing that all of the fuel that the trucks consumed in the state was purchased and taxed in the state. Where did it come from? Again, we don't know because they didn't keep the records. Part of the purpose of getting a motor fuel use tax license is that you keep accurate records and then you submit a quarterly statement. Well, give me an example, a scenario where, a worst case scenario from the point of view of the trucking firm here, of where this fuel came from. Well, as you know, fuel is transportable and storable. And so the idea behind the motor fuel use tax scheme is to require a license and a quarterly statement such that the state can accurately track the purchase and use of fuel in the state. Now, there's no direct allegation that interstate trucks brought in fuel from another state. We simply don't know. So it's possible, and this is the basis of the rejection of the affidavit, that instead of going around the corner and filling it up at some gas station here in Springfield, that they might have chosen to defraud the state of Illinois by having fuel trucked in from, let's say, Indiana to be used to fuel their trucks here in Springfield, Illinois. Is that your scenario? Well, I think there are two points that I'm trying to make. First, there's the general purpose of the legislature. In a lot of cases, if you want to tax fuel, you have to design a system that allows you to accurately track the purchase and consumption of fuel. Again, we're not making direct allegations against interstate, but we are saying that the burden is on the taxpayer to show where they got the fuel. I understand. Now I'd like the answer to my question. Which is? I gave you a scenario, and I'm wondering, is that what the department thinks could have happened here so as to render the affidavit in doubt? Well, the reason why the affidavit was challenged at the administrative hearing was for a couple of reasons. First of all, it was because the fueling pattern did not seem consistent with filling up five trucks. So let me stop right there. If there's some deficiencies in the receipt and what you think it showed, give me the alternative scenario, in a worst-case light for CIT, on where that fuel came from. So you're asking me to, I mean... Speculate. Was it trucked in from Indiana on a special load in the middle of the night to... They may have a supply of fuel that they keep. If they're selling a large number of trucks, it's not inconceivable that they have fuel. CIT does? They have their own fueling facilities? Yeah, but again, I don't, you know, this is all outside of the record speculation. The point of the motor fuel tax use, the motor fuel use tax, is to force them to keep accurate records so the state doesn't have to... How big a part of the ultimate ruling was the rejection of the affidavit in lieu of this alternative scenario, which you haven't yet provided us, So that, for instance, if we think the ALJ's decision was kind of dumb in that regard, does that mean you lose? No, not at all. That issue is tangential because even if you purchase all of the fuel in the state, you're still obligated to have either a tax license or a single-trip permit under 1384. So the only way, if you rejected the ALJ's position on fuel and you decided that they actually did purchase all of the fuel in Illinois, you would then have to decide that the fuel that they purchased was sufficient to get them outside of the state of Illinois. And again, the statute says, absent accurate records, presume that it's four gallons per mile. Then you would have to say, well, were the trucks operated solely within the state of Illinois? The answer there is no. So the fuel issue is not relevant to the question of 1384, whether or not you need a license or a decal. It's only relevant to the exception that they're claiming to the definition of commercial motor vehicle. They're saying, we purchased all the fuel in Illinois and the trucks were operated solely within Illinois. But the trucks weren't operated solely within Illinois. It's agreed that the trucks were purchased to take them out of state. How do you know that they returned to Kentucky? How do you know they didn't stop on the state border and stall at a bridge or an overpass and never enter the other state? You didn't put on any evidence of that. The reason that you know that is because that's what they were bought for. And in the worst of all possible worlds, somehow they made it back to Kentucky. So when you're talking about rational inferences, you're not talking about just supposition. You want us to presume that they exited the state of Illinois. And yet there's absolutely no proof of that, is there? I believe that was one of the nine stipulations I would have to go back and look at. Well, that's what it was stipulated to, too. If I was the LT, I could say, why did you guys stipulate these trucks left the state of Illinois? How do I know they weren't sold to another dealer in Cairo? That could have happened. Hell, that's just as likely as importing gas on some... If CIT screwed the state, what does that have to do with interstate trucks? If CIT has its own supply of fuel? Well, again, interstate trucks was obligated to either... Our position is simply they needed a license or a single-trip permit. They're the ones that are bringing up the issue of fuel to try to be entitled to the exception from the statutory definition of commercial motor vehicle. What did the legislature mean in the statute when they talked about 1.16? Except for commercial vehicles operated solely within Illinois, for which all motor vehicles purchased within Illinois. Why'd they put that in there? I think that that provision is in there because the refund provision gives you gallon for gallon credit for fuel that's purchased in Illinois. And so I think that the idea there is, if you can show that the vehicles are only being operated in Illinois and that you're purchasing all the fuel in Illinois, then there's no need to require you to register. There's not any kind of permit. If this dealer had been in Mount Vernon, would he have had a single-trip permit? In Mount Vernon, Illinois? He bought the trucks in Springfield, but he stopped in Mount Vernon. That's where his dealership is. Oh, I believe then they could argue that they were entitled to the exception under Section 1.16. Yeah, because the vehicles were operated solely within the state of Illinois. Yes. Yeah. Well, why isn't somebody in Nashville, Tennessee the same way? Your only concern about the vehicle is while it's operated in the state of Illinois. Once it's outside the state of Illinois, you can forget about it, can't you? I mean, Illinois is part of a 58-jurisdiction compact, so it's not... So you were trying to protect the states of Kentucky and Tennessee because these trucks fueled in Illinois were being driven in those states without a permit. Well, either the use and the license and the application that goes along with the license does aid in the collection of interstate taxes. The single-trip permit scheme is really a convenience made available. You're required to get a license unless you get a single-trip permit. It's not like you're required to get a single-trip permit. You're required to get a license, and then as a convenience, a single-trip permit is available in lieu of paying the tax. But the main focus of the statute is to preserve the integrity of the license. But you don't need a motor fuel license or a single-trip permit if you are a dealer in Mount Vernon, Illinois, and you've been in this situation. Again, then they would have to argue under 1.16 that they're entitled to an exception because all of the fuel was purchased within the state and the vehicle was used solely within the state. The reason for this concern about vehicles solely used in the state is the concern that you go out of state and buy fuel and then you come back into the state of Illinois and use it. There's zero concern about that in this case, isn't there? Again, the records are incomplete such that we don't know the location. What is his concern? Let me ask it. Picking up on Justice Cook's question, let's assume you had videotaped of the trucks being fueled in Springfield, Illinois. So whatever concerns the ALJ had, and you have now suggested to us, who knows, they're gone. Then answer his question. I could concede that, supposedly stipulated right now, that Interstate had purchased all of the gas and paid all of the tax at the pump. They would still lose because under the statute, they're required to either have a license or a single-trip permit. This may lead back to Justice Steigman's point. No, they aren't. They operate solely in the state of Illinois. They're not required to have a license or a permit. But they weren't operated solely within the state of Illinois. As long as they were within your concern, they were operated in the state of Illinois. Once they get outside the state of Illinois, you have no right to worry about them. You do have a right to worry about them if they go outside the state of Illinois and come back. That is not the case. Well, I would say that the legislature can decide what class of vehicles to include and exclude from the tax exempt. Sure. And they talked about vehicles that go through the state of Illinois. They talk about vehicles that start on the border, come inside the state of Illinois, go back to the border. They do not talk about vehicles that originate in the state of Illinois and exit the state of Illinois. Well, those are the list of single-trip permits available under Section 13.5. Initially, we were talking about what the definition of commercial motor vehicle means in Section 1.16. And there it says you have to be exclusively used within the state of Illinois. These trucks were not exclusively used within the state of Illinois. At all pertinent times, this truck was operated exclusively in the state of Illinois. I mean, that almost reduces it to a tautology. I mean, I don't think the agents are going to go to Tennessee to write tickets. Why should they care? Why should they care? Why should they? As Justice Cook points out, this is a truck that's going to be picked up in Springfield to leave the state and field in the state of Illinois and never to return to the state of Illinois. What's our issue? Again, the whole point of the scheme is to get you to either buy the permit or to get the license and then file the quarterly report. I would suggest the whole purpose of the scheme is the one set out in the statute, which talks about using fuel purchased outside the state of Illinois inside the state of Illinois without paying the use tax. Well, again, think about the difficulty the state has in identifying which trucks it should stop and should not stop of the many trucks that go down Illinois roads. The whole point of requiring either a license or a single-trip permit is they know if that truck passes by that that truck is complying with the motor fuel tax law. If they don't have the license and decal and they don't have the permit, then that's the ground to stop them. So the point of these requirements, I mean, they may seem... I wouldn't go as far as... Just think how much easier the burden of law enforcement would be if you weren't stopping trucks originating from Springfield, Illinois and headed out of town. But again, the state wants to collect tax on the distance that's traveled within the state. They eliminated the dealer exception. And there's no way of knowing without a single-trip permit or a license whether or not where they purchased their fuel from. Well, that's true, but Interstate isn't arguing about the stop. You made an appropriate stop. Yes. But then you get to the issue of... the practical issue of how did you get here and who are you? Which the LJ adjudicates by saying, even though the mischief that we're trying to eliminate, exclusio numero est, that's that one. And the other rule of statutory construction is the mischief rule. And Justice Cook has stated it by saying, what you're trying to do by this whole scheme is to make sure people don't buy motor fuel in other states and operate vehicles on our roadways. Once it's shown that 150 gallons of fuel were purchased, even though there's some discrepancy about at which pump, Central Illinois Trucks says, we provided 30 gallons of fuel for 5 trucks. We bought 150 gallons of fuel. We're the seller of the truck. We purchased the gasoline. We paid tax on it. That's the presumption. And we filled these trucks up so these people that came to Illinois to do business and buy trucks from us could exit the state never to be seen again. Now, what's the public policy behind making them pay $4,000 in fines? Is that just the record-keeping aspect of it? Well, again, the penalty is designed to encourage people to comply with the law. They didn't comply with the law. So the fact that in this case they had purchased all the fuel, you know, that's when the legislature writes a statute like this and has a tax collection scheme, they take into account the possibility that, you know, not everyone is going to willingly comply with the scheme. So you have to have some sort of penalty for people that don't comply. And it may be in this case that they purchased all of the fuel, but they still didn't have the license or the single-trip permit, and those are necessary elements of the overall enforcement scheme. Well, you said the single-trip permit seemed to be really for the purpose so we'd know who to stop. And we'd know whether they were doing what they were supposed to. So you stop them. They don't have the single-trip permit. And then you say, well, what's behind that? You need to purchase it because we didn't buy any gas in the state of Illinois. Central Illinois Trucks bought it. They paid the tax on it. We filled our trucks up, and we're leaving, and we don't want to come back to Illinois. And furthermore, we're not going to come back and buy any trucks because your people are crazy. Well, again, I would say that if you were to hold for interstate trucks and they weren't required to have single-trip permits, it would make it more difficult to enforce the laws because you would basically allow ad hoc rationalizations for why we didn't have a license or a permit because we did purchase the fuel. What about my example before about if this dealer had been in Mount Vernon, Illinois, he wouldn't have had a motor vehicle tax license. He wouldn't have had a single-trip permit. He would have been confusing the arresting officers as well, wouldn't he? He would, yes. So your argument is down the tubes. Lots of trucks drive without these permits, and it's no great harm to law enforcement. Well, again, the legislature has to – we don't know the number. The legislature would know better than us here the number of interstate trucks traveling through versus the number of local buses. But when you make the argument a truck has to have either the license or the single-trip permit, it has to have that decal out there, that's wrong because there are other trucks that are allowed to use the highways without those permits. I said that was for a commercial motor vehicle. The truck that you described is not defined as a commercial motor vehicle under Section 1.16. It looks just like the one that was being – or the three or four that were being driven in this case, right? But I would like to get back to Justice Steigman's points again. It does seem that there's some sort of skepticism about the wisdom of what the legislature has done here. But that's not – if you look at the plain language of the statute, it says you either need a license or a single-trip permit. The trucks were stopped. They didn't have either a license or a single-trip permit. There's no doubt that these were commercial motor vehicles. They were not used exclusively within the state. They were driven to the dealer in Tennessee. They're not entitled to the exception. So once they're a commercial motor vehicle, you need a license. Let me ask you about that. Suppose I'm somebody driving my commercial motor vehicle strictly in the state of Illinois, but next year I intend to drive it to Kentucky. Does that mean it's not operated in the state of Illinois, solely in the state of Illinois? No. I believe the permits and licenses are on a year-by-year basis. So I'm not sure what – I don't know how it's administered on the ground in terms of how you would – I can see once I've driven it to the state of Kentucky, I'm in trouble. But until that happens, it seems to me I'm operating it solely within the state of Illinois. But so are you then requiring Illinois Department of Revenue agents to wait across the border for trucks to violate the law as opposed to stopping them in Illinois? That would produce – No, I think the only thing they should do is stop them after they come back into the state of Illinois. That's the question. Once they're out of the state of Illinois, they're gone. But then the state isn't guaranteed to be compensated for the miles that have been traveled and the fuels that have been used within the state of Illinois. Sure it is. You have to rely on their goodwill to pay the pump. If the vehicle is operated solely within the state of Illinois and not bordered to border, you get your motor fuel tax. If you buy the gasoline from Illinois gas pumps, the tax is paid. I see that I'm over time. Unless there are any other questions, I'd ask that you affirm. Thank you. Very briefly, just two points. One, I think the only case that's been decided is the owner-operators versus Bowers. And it specifically says, and I submit it stands for the fact that what's – the result sought to be achieved by the statute is to see that Illinois collects sales tax on fuel consumed on Illinois roads. That's number one. And the other point was, I don't know where this four-mile-per-hour presumption comes from. That's brand new. That might make sense when you've got the ordinary situation where, you know, maybe there's some presumption of semis pulling tractors. But these were all deadheads. That was all stipulated, too. They were pulling nothing. They were just taking tractors and driving them to Tennessee. And the affidavit that was submitted said we'd give them enough fuel, you know, I think probably to get to Luverne, Tennessee, but certainly to Paducah, Kentucky. What was that case you just cited to us? Owner-operator versus Bowers. Is that in your brief? It was not in mine. Yeah, I think it is. Oh, okay. I was wondering. I was looking in your – You brought it up and I mentioned it in my replies. I'm sorry I interrupted you, Counsel. No, I mean that's all I have unless the court has any other questions. Well, I think first of all the figure, I think you reversed the figure. You said four gallons per mile. I think you meant to say four miles per gallon. And then you said that, four miles per gallon. Is that somewhere in the record? I don't remember that ever coming up before, and that's why I address it. And it might make sense in the context that we had a real commercial carrier who was pulling property behind these trucks or carrying persons. I mean that might make sense. But just driving deadhead, I know that the mileage is much, much greater than that. Deadhead means the tractor without the trailer? Correct. Does it matter? I mean, whose burden, if any, was it to put that in? I knew nothing of a presumption of four miles an hour. The implication is if you take the 30 gallons of gas and multiply it times three, it's 120 miles. That might not get you to Paducah, Kentucky. But if you're deadhead and you're getting 12 miles a gallon, well, certainly you get to Luverne, Tennessee. It's just a new thing, and I thought because Counsel raised it. Well, I thought we were acting under the supposition here, and I'm wondering if that's what the record shows, that however much mileage, how much fuel these trucks had was enough to get them to the border. Exactly. And I think that still they understand. That's what I established and I think is sufficient under this Act. Okay. Thank you. Thank you, Counsel.